

NILES L. JACKSON
**U. S. BANKRUPTCY JUDGE**
SITTING BY DESIGNATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| WILLIAM SUTER, III, | * | Case No. 04-12030-NVA |
| Debtor. | * | (Chapter 7) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DISTRICT OF COLUMBIA, | * | |
| Plaintiff, | * | |
| v. | * | Adversary No. 04-1944-NVA |
| WILLIAM SUTER, III, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF DECISION DETERMINING DEBT
OF DISTRICT OF COLUMBIA TO BE NONDISCHARGEABLE**[1]

On June 3, 2005 the Court conducted a hearing on the Motion for Summary Judgment

(the "Motion") filed by the District of Columbia (the "District"), the subject of which was

---

[1]   The Court acknowledges with appreciation the work of law clerk Carrie Weinfeld in the research and
drafting of this Memorandum of Decision.

whether certain debts owed by William Suter, III ("Mr. Suter" or the "Debtor") for restitution, civil penalties and costs assessed against the Debtor by default judgment in an action in the District of Columbia Superior Court are dischargeable under 11 U.S.C. § 523(a)(7).  At the end of that hearing, the Court asked the parties to submit additional authority on the effect the Debtor's motions to vacate the default judgment have on the "actually litigated" requirement of collateral estoppel and final judgments, which will be further discussed below.  Having considered argument of the parties, the pleadings, the supplemental papers requested on June 3, 2005, and the record in this matter, the Court finds that the Motion will be granted, as set forth below.

## **Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. Proc. 56(c).

The Rule further provides:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Fed. R. Civ. Proc. 56(e).

One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). To that end, the Court considers all evidence in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) (all justifiable inferences are drawn in the nonmovant's favor). The mere existence of an alleged factual dispute does not defeat a motion for summary judgment; rather the standard requires that there be no genuine issue of *material* fact. *Id*. at 248. Only disputes over the facts that might affect the outcome of the lawsuit under applicable law will preclude entry of summary judgment. *Id*. Therefore, once the moving party meets its burden of production, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. The nonmovant may rely on any evidentiary materials listed in Rule 56(c), except the motions themselves. *Celotex,* 477 U.S. at 325.

The Court relies on the following evidentiary materials submitted by the District:

1.     Complaint for Permanent Injunction and Other Equitable Relief, Restitution, and Civil Penalties, filed July 8, 2002, attached to the Motion as Exhibit 1;

2.     Order Granting in Part and Denying in Part District of Columbia's Motion to Amend Order for Restitution, for Civil Penalties, for Attorney's Fees and for Permanent Injunctive Relief, filed March 5, 2004 (the "Judgment"), attached to the Motion as Exhibit 2;

3.     Order Noting Withdrawal of Defendant's Motion to Vacate Default, filed May 20, 2003, attached to the District's Reply to Debtor's Preliminary Response to the District's Motion for Summary Judgment (the "Reply") as Exhibit 1;

4.      Defendants'[2] Supplemental Response to Plaintiff's Proposed Ex Parte Proof of Damages, and Motion to Dismiss Complaint for Lack of Jurisdiction, filed June 12, 2003, attached to the Reply as Exhibit 3;[3]

5.      Pro Se Motion of William Suter for Paper for Court and the Master to Help with His Findings, filed October 3, 2003, and the Order Granting Defendant's Motion Styled "Papers for Court and Judge for [Special] Master", filed October 10, 2003, attached to the Reply as Exhibit 4;

6.      Exceptions of William Suter, pro se, to the Report and Recommendation of Special Master, filed October 14, 2003, attached to the Reply as Exhibit 5;

7.      Motion to Stay of Defendant, William Suter, filed May 13, 2004, attached to the Reply as Exhibit 7;[4]

8.      District of Columbia's Submission in Response to Request of the Court (the "District's Supplement"), with the following exhibits:

a.      Post Hearing Memorandum [of the Defendants], dated July 26, 2002, attached to the District's Supplement as Exhibit 1;

b.      District of Columbia's Post-Hearing Memorandum in Support of Motion for Preliminary Injunction, filed July 19, 2002, attached to the District's Supplement as Exhibit 2;

---

[2]   Where the plural "defendants" appears, the Court is referring to the three defendants in the DC Action, which is defined below.

[3]   The Court notes that the document attached to the Reply as Exhibit 2 is not dated and is not signed by counsel, nor is there a file-stamped date on the pleading.  The Court therefore, opts to discount this document in its decision.

[4]   The Court notes that Exhibit No. 6 of the Reply is the same document as Exhibit 2 of the Motion.

       c.      Memorandum Order, dated August 2, 2002, attached to the District's Supplement as Exhibit 3; and

       d.      Preliminary Injunction Order, dated August 2, 2002, attached to the District's Supplement as Exhibit 4.

The Court relies on the following evidentiary materials submitted by the Debtor: Affidavit in Support of Response to Summary Judgment (the "Response"), filed April 26, 2005. The Debtor submitted no exhibits with its Response or its Post-Trial Filing.[5]  The Court also relies on the Order (1) Denying Motion to Dismiss of Defendant William Suter; (2) Denying Defendants' Motion to Set Aside Order Noting Withdrawal of Defendants' Motion to Vacate Default and Reinstate the Same Motion to Vacate Default; and (3) Entering Final Order Regarding Restitution, filed January 12, 2004 in the DC Action (the "Restitution Order"), and submitted to the Court at the hearing on June 3, 2005.

Based on the foregoing, and as set forth below, the Court finds that there are no issues of material fact and that the District is entitled to judgment as a matter of law.

### Facts

The following facts are not in dispute.  On July 8, 2002, the District filed a complaint against The Steven A. Rosen Company, CW Restoration, Inc. and the Debtor (the "Complaint"), in a case captioned *District of Columbia v. The Steven A. Rosen Co.*, Civil Action No. 02-549 (the "DC Action").  At the time of the DC Action, the Debtor was the sole officer of The Steven A. Rosen Company and president of CW Restoration, Inc.  All three defendants were represented

---

[5]  The Court notes that a certain "incomplete document" referred to in the Debtor's  Post-Trial Filing on Summary Judgment, filed on June 10, 2005, was not attached and therefore cannot be considered by the Court.

by counsel, Claude Roxborough, Esq., and/or Edward M. Kimmel, Esq., of Kimmel & Roxborough, LLC.

The subject of the DC Action involved allegations by the District, under the District of Columbia's Consumer Protection Procedures Act and Consumer Protections Act (collectively, "DC Consumer Laws"), that the defendants engaged in fraudulent and deceptive business practices in connection with the insurance adjustment process and restoration of homes destroyed by fire.  The District alleged, among other things, that the Debtor and his two companies held themselves out to the public as insurance adjusters, and misrepresented to consumers that they could maximize settlements paid by insurance companies, arrange for temporary housing for people displaced by fire, and reconstruct or repair the damage to the home.

On July 8, 2002, the Superior Court held a hearing on the District's request for a temporary restraining order and on July 17, 2002, the Superior Court held a hearing on the District's request for preliminary injunction.  The Debtor appeared at both of these hearings and was represented by counsel.  On July 26, 2002, the defendants in the DC Action filed a Post Hearing Memorandum.  On August 2, 2002, the Superior Court entered a Preliminary Injunction Order and Memorandum Order.  Pursuant to the Memorandum Order, the Superior Court found that:

> "(1)    William Suter controls The Steven A. Rosen Company and CW Restoration, Inc., all defendants named in this action;
>
> (2)    William Suter, through his companies, agents, and employees, took advantage of homeowners who had just suffered losses from fire, pressuring them into signing contracts with his companies when they were least able to protect themselves;

> (3)      William Suter, through his companies, agents, and employees, misrepresented to homeowners the services his companies would provide and the fees they would charge;
>
> (4)      William Suter, through his companies, agents, and employees, sent forged contract documents to homeowners' insurance companies, forged endorsements on checks, and diverted for his own benefit insurance proceeds intended for subcontractors and policyholders; and
>
> (5)      William Suter, through his companies, agents, and employees, as [sic] result of his fraudulent diversion of insurance proceeds, failed to complete renovations and repairs he had agreed to perform, leaving homeowners stranded in temporary housing and without financial resources."

*See* Memorandum Order, District's Supplement, Exhibit 3.

On September 25, 2002, the District moved for entry of default on the grounds that neither the Debtor nor the corporate defendants had filed an answer to the Complaint. The Superior Court entered default. The defendants did not oppose this motion. Upon entry of default, the defendants tried twice unsuccessfully to set aside the default, which attempts were denied for failure to comply with the procedural rules. The Superior Court then gave the defendants a third opportunity to set aside the entry of default on May 16, 2003. The defendants declined and informed the Superior Court that "for business reasons" they would proceed with an *ex parte* hearing on the issue of damages. The parties submitted their papers on the issue of damages, and the Special Master issued its report on October 1, 2003.

On October 3, 2003, the Superior Court granted the Debtor's request to proceed *pro se*. The Debtor filed exceptions to the Master's report. Also, on November 17, 2003, he filed a motion to dismiss. On January 12, 2004, in the Restitution Order, the Superior Court denied the Debtor's motion to dismiss and also stated:

"The Court is aware that a default judgment should not be entered against a party if the Complaint, on its face, does not set forth a valid legal claim against that party, even though default may have been entered;"

"Despite Suter's protestations, the Complaint clearly makes out a claim against him. First, there are allegations against him individually. For example, he is personally alleged to have made untrue representations and not to have made required disclosures. See Complaint at 8. Corporate officers are 'personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation." Vuitch v. Furr, 482 A. 2d 811 , 821 (D.C. 1984). In addition, in looking to the Complaint only, this is a case in which sufficient allegations have been made to pierce the corporate veil and hold Suter personally liable. First, the Complaint alleges that 'Defendant Suter is the sole Director, President, Vice President, Secretary and Treasurer of CW. Defendant Suter is also the Vice President, and sole Officer of Rosen. He controls and participates in the acts and practices that are the subject of this action.' Id. at 3. In addition, Rosen and CW have the same address, they engage in sham internal deals that they fraudulently represent to consumers are arm's-length transactions, and CW is unlicensed. The Court, therefore can conclude that 'the corporation is, in reality, an *alter ego* or business conduit of the person in control' and that 'considerations of justice and equity... justify piercing the corporate veil.' Lawlor v. District of Columbia, 758 A.2d 964, 975 (D.C. 2000). Since the Complaint thus does state a cause of action against Suter, judgment can be entered against him."

See Restitution Order, pp. 4-5.

Pursuant to the Restitution Order, judgment was entered in favor of the Master and against all defendants in the amount of $3,328.50 and restitution was entered in favor of the District and against all defendants in the amount of $1,916,185.00. The Restitution Order further directed the District to file a motion to the extent it sought permanent injunctive relief and attorney's fees, and that if "no motion is filed, the Court will enter a final judgment along the lines of the Order entered today." See Restitution Order, p. 9.

On March 2, 2004, the Superior Court entered the Judgment, which permanently enjoined the Debtor from engaging in the conduct that had been enjoined on a preliminary basis, and also awarded in favor of the District and against all defendants restitution in the amount of

$2,162,928.00, civil penalties in the amount of $52,000.00, and attorney's fees in the amount of

$290,000.00. The District was directed to dispense the restitution award to consumers through a

distribution plan to be developed and submitted to the Superior Court for approval:

> "after collection of the judgment and outreach to additional consumers
> who may have suffered monetary damages as a result of their engagement of
> Defendants for public insurance adjusting services. Should Plaintiff collect
> only a portion of the monetary judgment owed by Defendants, Plaintiff shall
> apportion 90% of the funds collected as restitution for consumers and 10%
> of the funds collected as attorney fees."

*See* Judgment, p. 4.

After the Restitution Order and before the Judgment were docketed in the DC Action, the

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On July 30, 2004, the

District commenced the instant adversary proceeding, seeking a determination that the amounts

awarded in the Judgment are non-dischargeable pursuant to 11 U.S.C. § 523(a)(7). The Debtor

filed his Answer on December 23, 2004, only after the District filed a Motion for Default

Judgment. That motion was denied. The District then filed its Motion on March 30, 2005 [28].

The Debtor filed a Preliminary Response to Summary Judgment (the "Response") April 25, 2005

[29]. The District filed its Reply May 5, 2005 [32], and the Debtor filed his Affidavit in Support

of the Response May 18, 2005 [35]. As stated above, the Court conducted a hearing on this

matter June 3, 2005. The District submitted the District's Supplement on June 9, 2005, which it

filed on the docket June 14, 2005 [38]. The Debtor filed its Post-Trial Filing June 10, 2005 [37].

## Discussion

There are three issues raised by the Motion, the Response and subsequent papers

identified herein: (1) whether the Judgment was entered in violation of the automatic stay, or

whether Section 362(b)(4) of the Bankruptcy Code applies; (2) whether the Judgment, which

was obtained by default, is entitled to preclusive effect; and (3) whether the amounts awarded in the Judgment against the Debtor are non-dischargeable under Section 523(a)(7) of the Bankruptcy Code.  The Court addresses each issue in turn.

### *11 U.S.C. § 362(b)(4)*

Section 362(a) of the Bankruptcy Code provides that the filing of a petition operates as a stay, among other things, of continuation of a judicial proceeding against the debtor that was commenced before the petition date.  11 U.S.C. § 362(a)(1).  However, the filing of the petition does not operate as a stay:

> "Under paragraph (1)(2), (3) or (6) of subjection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or an organization exercising authority under the convention on the prohibition of the development, production, stockpiling and use of chemical weapons and on their destruction, opened for signature on January 13, 1993 [the "Convention"], to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."

11 U.S.C. § 362(b)(4).

The District argues that it was exercising its regulatory authority under the consumer protection laws of the District of Columbia to punish the Debtor's wrongful conduct and to deter further conduct in the future.  The Debtor argues that the Judgment is void because it was entered against the Debtor after the petition date in violation of the automatic stay, and that only proceedings by governmental units exercising authority under the Convention are excepted from the automatic stay.  This interpretation of Section 362(b)(4) is too narrow.  The standard in the Fourth Circuit for determining whether or not certain governmental action is excepted from the automatic stay under Section 362(b)(4) is as follows:

> "If the purpose of the law is to promote 'public safety and welfare,' or
> to 'effectuate public policy,' then the exception applies.  On the other hand,
> if the purpose of the law relates 'to the protection of the government's
> pecuniary interest in the debtor's property,' or to 'adjudicate private rights,'
> then the exception is inapplicable."

*FTC v. Ameridebt, Inc.*, 343 F. Supp. 2d 451, 458 (D. Md. 2004) (citing *Safety-Kleen, Inc. v. Wyche (In re Safety-Kleen, Inc.),* 274 F. 3d 846, 865 (4th Cir. 2001)).

Neither governmental unit in *FTC* or *Safety-Kleen* were exercising authority under the Convention.  *See FTC*, 343 F. Supp. 2d at 458 (enforcing the Federal Trade Commission Act for the protection of the public welfare and to uphold policy regarding the credit counseling industry); *Safety-Kleen*, 274 F. 3d at 865 (enforcing state regulatory power to deter environmental misconduct under CERCLA).

For the foregoing reasons, the District of Columbia's continued litigation in the DC Action and the entry of the Judgment after the Debtor filed his voluntary bankruptcy petition did not violate the automatic stay.

### *Collateral Estoppel Effect of Judgment Entered by Default*

In nondischargeability cases like this one, collateral estoppel is often invoked by creditors who have obtained a judgment under state law against a debtor in order to preclude that debtor from litigating a new the matter already decided before the petition date.  The Debtor argues that the Judgment is not entitled to preclusive effect because the Debtor never filed an answer in the DC Action and it was entered by default.  The District counters that despite the Debtor's failure to file an answer to the Complaint, he fully participated in all phases of the litigation, from the hearing on the preliminary injunction, to the various attempts to set aside the default to the submission of pleadings in the damages phase.

Collateral estoppel renders conclusive in the same or a subsequent action determination of an issue of fact or law when: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue is actually litigated; (3) the issue is determined by a valid final judgment on the merits; and (4) under circumstances where the determination was essential to the judgment. *Nestorio v. Associates Commercial Corp. (In re Nestorio)*, 250 B.R. 50, 55 (D. Md. 2000). See also Bryson v. Gere, 268 F. Supp. 2d 46 (D. D.C. 2003) (setting forth similar factors under D.C. law. In some instances a default judgment may be entitled to the same preclusive effect as a judgment after trial on the merits. *Tatge v. Chandler (In re Judiciary Tower Associates)*, 175 B.R. 796, 805 (Bankr. D. D.C. 1994) (internal citations omitted).

The issue in the instant case turns on the meaning of "actually litigated." "Most courts" hold that this requirement is met, even if there is no adversarial hearing when: (1) the defendant files an answer or otherwise appears in the action; (2) issues are submitted to a finder of fact; (3) issues are determined after a party has notice and an opportunity to be heard; and (4) the defendant had proper incentive to litigate the matter in the prior hearing and could reasonably foresee litigation on the same issue. *Nestorio*, 250 B.R. at 56. *See also Medina Dev. Co. v. Ansari (In re Ansari)*, 113 F. 3d 17, 20 (4th Cir. 1997) (finding that an issue had been actually litigated under Virginia law after the *ex parte* submission of documentary evidence in a district court hearing); *Bryson*, 268 F. Supp. 2d at 59 (actually litigated means that an issue is "'properly raised, by pleadings or otherwise, and is submitted for determination, and is determined'") (quoting the Restatement (Second) of Judgments § 27, cmt. d))

The Debtor relies on *In re Raynor* for the proposition that the issue of liability in the DC Action was not "actually litigated" because the Debtor did not file an answer. However, the facts of that case are significantly different than those presented here. In the *Raynor* case, the

-12-

debtor did not file an answer to a complaint filed against him in state court, he had no contact with the attorney he retained to represent him in that state court action for six month before trial, the attorney did not enter an appearance on his behalf and was permitted to withdraw on the day of trial, and the debtor had no notice of the trial and no representation. *M&M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F. 2d 1146, 1147 (4th Cir. 1991). After the debtor filed bankruptcy, M&M sought a determination that the judgment it obtained in state court by default was conclusive as to the debtor's liability and therefore the judgment debt was nondischargeable under 11 U.S.C. § 523(a)(2). *Id*. at 1148.

In this case, the Debtor attended, and was represented by counsel, the hearing on the temporary restraining order and the hearing on the District's request for preliminary injunction. The Debtor's attorney filed post-hearing briefs on his behalf. The Debtor and/or his companies decided for business reason, after several attempts to set aside the default, to proceed to the damages phase of the litigation. By that time, the Debtor had asked the Superior Court to proceed without the benefit of counsel. He personally submitted papers in connection with the damages issue and the Master's report. He filed his own motion to dismiss the DC Action. In the Restitution Order, the Superior Court explicitly set out the reasons judgment against him was appropriate, despite his failure to answer the Complaint, and "despite his protestations." The Judgment merely made the injunction permanent and assessed restitution and costs against him.

The Court is therefore unpersuaded that the Debtor did not have a full and fair opportunity to participate in the DC Action and that the issue of his liability for violations of the consumer protection laws of the District of Columbia was not actually litigated.[6]

### *Nondischargeability Under 11 U.S.C. § 523(a)(7)*

Section 523(a)(7) of the Bankruptcy Code excepts from discharge certain debts "to the extent that such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss" (other than certain tax penalties not applicable here).  11 U.S.C. § 523(a)(7).  The legislative history of this section makes clear that a debt arising from a judgment requiring a debtor to make restitution as a result of a violation of law is nondishargeable.  S. Rep. No. 119, 100th Cong., 2d Sess. 8-9. the loans.

In order for a debt to be excepted from discharge under this section, the debt must satisfy two requirements: (1) it must be to and for the benefit of a governmental unit; and (2) it must be penal and not pecuniary in nature.  *See Cisneros v. Cost Control Marketing and Sales Mgt. of Va.,* 862 F. Supp. 1531, 1534 (D. W.D. Va. 1994) (finding that restitution award for violation of the Interstate Land Sales Full Disclosure Act ensures compliance and safeguards the public interest in such compliance)); *see also Attorney Grievance Comm'n. of Md. v. Smith (In re Smith)*, 317 B.R. 302, (Bankr. D. Md. 2004) (fines or penalties can be civil or criminal in nature).  Costs incurred by the governmental agency in enforcing its regularity power are also not

---

[6]    The Court asked the parties for further authority in support of their positions regarding the effect a withdrawal of a motion to vacate the default judgment would have on the collateral estoppel effect of the Judgment. Each party submitted a response that, while helpful, did not answer the precise question asked.  The Court's decision therefore does not rest solely on whether the Debtor's affirmative decision to leave the entry of default intact operates as a waiver or ratification of the Judgment; there are ample other examples of his full participation in the DC Action, as set forth above, that warrant the conclusions reached herein.

dischargeable. *Thompson v. Commonwealth of Va.*, 16 F. 3d 576, 581 (4th Cir. 1994). Whether any money reaches the victim is immaterial to the analysis. *Id.* Moreover, a restitution award can be payable "to and for the benefit of" a governmental unit even if that unit receives the money and then distributes it to the victims. *In re Byrd*, 256 B.R. 246, 255 (Bankr. E.D.N.C. 2000).

Accordingly, for the foregoing reasons, the Court finds that there is no genuine issue of material fact and that the District is entitled to judgment as a matter of law. The debt owed to the District is deemed nondischargeable pursuant to Section 523(a)(7) of the Bankruptcy Code. An order will be entered contemporaneously with this Memorandum.

Cc:

Office of the U.S. Trustee
Counsel for the District of Columbia
Counsel for the Debtor
Debtor